**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-4548
_____

XINXI LU,
                              Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES
_____

On Petition for Review of an Order
of the Board of Immigration Appeals
Agency No. A089 253 898
Immigration Judge:  Susan G. Roy
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 18, 2010
Before:  RENDELL, FISHER AND GARTH, Circuit Judges

(Opinion filed: August 20, 2010)
_____

OPINION
_____

PER CURIAM

        Xinxi Lu petitions for review of an order of the Board of Immigration Appeals

("BIA" or "Board"), which dismissed his appeal from an Immigration Judge's ("IJ")

removal order.  We will deny the petition for review.

Xinxi Lu, a native and citizen of the People's Republic of China, came to the United States in 2001 on a B-1 visa. In 2008, he was placed in removal proceedings pursuant to section 237(a)(1)(B) of the Immigration and Nationality Act ("INA") [8 U.S.C. § 1227(a)(b)(B)] for overstaying his visa. Lu admitted removability and requested asylum, withholding of removal and relief under the United Nations Convention Against Torture ("CAT"). Lu initially claimed asylum on two grounds: (1) in March 2001, he was beaten by a local police officer in retaliation for reporting the owner of the copper plant (where Lu worked) for embezzling the plant's funds and engaging in other corrupt activities (the "whistle-blowing claim"); and (2) he feared persecution for his political beliefs if he returned because of his membership in the China Democracy Party ("CDP") (the "CDP claim"). A.R. 422-25. At a hearing before the IJ, Lu only discussed the CDP claim, and he only pursues that claim here.

Lu testified that he joined the CDP in the United States in July 2007, and wrote three anti-Chinese government articles against the communist regime that were published on the CDP's website. He also participated in numerous anti-Chinese government demonstrations in New York City. He stated that known CDP members in China had been arrested and imprisoned for their activities. He asserted that in September 2007, local Chinese police paid a visit to his wife (Jing Shang) and interrogated her about Lu's political activities in the United States. They warned Shang that if Lu returned he would

be arrested, prosecuted as a criminal, and imprisoned. The police visited again a month later; Shang refused to say anything against her husband. Shortly thereafter, she lost her job. The police continued to harass and threaten her at home.

The IJ denied all forms of relief. The IJ found that because Lu had shown changed circumstances (his membership in the CDP in 2007), his asylum application was timely.[1] A.R. 30-31. The IJ made an "overall" adverse credibility determination based on a "major inconsistency" between his very detailed account of the whistle-blowing claim in his I-589 statement and his disavowal of the claim at the hearing. A.R. 38-41. The IJ noted, however, that "this is not to suggest that [the IJ] does not believe certain portions of the respondent's testimony today . . . when he says he joined the China Democratic Party." A.R. 38-39. The IJ found credible Lu's testimony that he was an active member of the CDP beginning in 2007. The IJ questioned the credibility of Shang's affidavit and Lu's testimony about the frequency of police visits to his wife and his testimony that Shang was fired because of his political activities, see A.R. 42-44, and ultimately found that Lu failed to show that he had an objectively reasonable fear of future persecution

---

[1] Though we are unaware of precedential Third Circuit opinion that so holds, we assume that an alien can claim asylum based on activities he or she engaged in since arriving in the United States. See Li Jun Yan v. Att'y Gen., 346 Fed. Appx. 855, 858 (3d Cir. 2009) (not precedential); Tun v. United States INS, 445 F.3d 554, 570 (2d Cir. 2006); Ghadessi v. INS, 797 F.2d 804, 807-09 (9th Cir. 1986). The applicant must show that "authorities in his country of nationality are either aware of his activities or likely to become aware of his activities." Yan, 346 Fed. Appx. at 858 (citing Leng v. Mukasey, 528 F.3d 135, 138 (2d Cir. 2008)).

based on his political beliefs. The IJ noted that, in light of the inconclusive nature of the State Department Reports regarding the treatment of returning CDP members, Lu had to provide evidence showing that he would be targeted by the Chinese government for arrest and imprisonment. A.R. 47. After rejecting Lu's corroborating evidence, the IJ determined that he failed to meet his burden. Specifically, the IJ discounted Shang's affidavit as outdated, A.R. 47, and found that there was no evidence that Shang lost her job because of Lu's membership in the CDP. A.R. 48.

The BIA dismissed the appeal. The Board held that there was no clear error in the IJ's "partial adverse credibility finding" as to Lu's whistle-blowing claim. A.R. 3. As for the merits of the CDP claim, relying on the State Department's 2007 Profile of Asylum claims for China, the BIA held that Lu failed to meet his burden of demonstrating a well-founded fear of future persecution based on his active participation in the CDP. A.R. 4. Lu filed a timely petition for review.

## II.

An applicant may demonstrate eligibility for asylum by showing either past persecution or a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion. See INA § 101(a)(42)(A) [8 U.S.C. § 1101(a)(42)(A)]. We use a substantial evidence standard to review factual findings, Tarrawally v. Ashcroft, 338 F.3d 180, 184 (3d Cir. 2003), including findings concerning an applicant's past persecution or "well-founded fear of

4

future persecution," Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002). Under the substantial evidence standard, findings are upheld "unless the evidence not only supports a contrary conclusion, but compels it." Abdille v. Ashcroft, 242 F.3d 477, 484 (3d Cir. 2001) (citation omitted). We review legal conclusions of the IJ or BIA de novo.[2] See Briseno-Flores v. Att'y Gen., 492 F.3d 226, 228 (3d Cir. 2007).

The BIA noted that the IJ found Lu credible with regard to his CDP claim, but that the IJ found he had not met his burden of proof to establish a well-founded fear of persecution because of his political opinion.[3] Both the IJ and the BIA noted that the State Department's asylum profile indicates that it has "no independent information about how people involved in [U.S.-based groups advocating democracy in China] are treated if they return to China." See "China: Profile of Asylum Claims and Country Conditions," May 2007, A.R. 178. In finding that Lu had not met his burden, the BIA appears to have implicitly agreed with the IJ's finding that Lu presented no competent corroborating evidence to support his claim that he, personally, would be targeted for arrest and imprisonment upon his return. The IJ rejected Shang's affidavit as corroborating evidence because it was not updated as to the number of police visits to the family home. The IJ treated as pivotal a discrepancy between Lu's testimony (seventeen visits as of

---

[2] We review the final order of the BIA, but to the extent that the BIA adopts parts of the IJ's opinion, we review the IJ's opinion to determine whether the BIA's decision to defer to the IJ was appropriate. Zhang v. Gonzales, 405 F.3d 150, 155 (3d Cir. 2005).

[3] Because Lu does not pursue his "whistle-blowing claim" here, we need not address the adverse credibility finding as to that claim.

5

January 2009, A.R. 131); and Shang's March 2008 affidavit (A.R. 360-61), which mentioned three police visits to her home beginning in September 2007. Reasonable jurists would not be compelled to conclude that the IJ erred in rejecting the affidavit as outdated and inconsistent with Lu's testimony. Further, although one might draw an inference that Lu's wife was fired because of his CDP membership, Lu conceded that his wife had not been told why she was fired; a fact-finder would not be compelled to find that she was fired due to his political views. A.R. 148. Thus, substantial evidence supports the BIA's finding that Lu did not meet his burden of showing that he has a well-founded fear of persecution on the basis of his political beliefs.

Lu also states that there is "a clear probability he will suffer torture if returned to China," Pet'r's Br. at 21; but he does not point to any evidence in the record that shows it is more likely than not that he will be tortured.[4] We thus reject his challenge to the denial of relief under the CAT.

For the foregoing reasons, we will deny the petition for review.

---

[4] An applicant for relief under the Convention Against Torture bears the burden of establishing that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." Ghebrehiwot v. Att'y Gen., 467 F.3d 344, 352 (3d Cir. 2006) (internal quotation marks omitted). The alien must establish "by objective evidence" that he is entitled to relief." Id. If an alien meets his or her burden of proof, withholding or deferring of removal is mandatory. Id.